1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

STEPHEN V. WEAVER, individually, and on behalf of all others similarly situated,

                                   Plaintiff,

v.

AMENTUM SERVICES, INC.; AECOM.; and DOES 1 through 20, inclusive,

                                   Defendants.

Case No.:  22-cv-00108-AJB-NLS

**ORDER:**

**(1) GRANTING PLAINTIFF'S MOTION TO REMAND; and**

**(2) DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS**

**(Doc. Nos. 5, 7)**

Presently before the Court is Plaintiff Stephen Weaver's ("Plaintiff") motion to remand, (Doc. No. 7), and Defendant Amentum Services Inc.'s ("Defendant") motion to dismiss, (Doc. No. 5). These motions are suitable for determination on the papers and without oral argument in accordance with Local Civil Rule 7.1.d.1. Upon consideration of the motions and the parties' arguments in support and opposition, Plaintiff's motion to remand is **GRANTED** and Defendant's motion to dismiss is **DENIED AS MOOT**.

///

///

# I.   BACKGROUND[1]

Plaintiff is a former nonexempt employee of Defendant Amentum Services, Inc. within the State of California and brings this suit on behalf of himself and all class members. (*See generally* Complaint ("Compl."), Doc. No. 1-3.) Plaintiff originally filed the action in San Diego Superior Court on November 24, 2021. (*Id.*) The lawsuit was brought on behalf of Plaintiff and "a putative class of California citizens who are and were employed by Defendants as non-exempt employees throughout California." (Compl. ¶ 1.) Plaintiff asserts eight causes of action against Defendant: (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) unpaid meal period premiums; (4) unpaid rest period premiums; (5) failure to reimburse business expenses; (6) itemized wage statement penalties; (7) failure to pay all wages due upon separation of employment; and (8) violation of California Business and Professions Code §§ 17200 et seq. ("UCL"). (*See generally id.*) On January 6, 2022, Defendant Amentum timely removed the action. (Doc. No. 1.) Plaintiff thereafter filed the instant motion alleging the Complaint fails to meet the minimum amount-in-controversy necessary for jurisdiction under CAFA. (Doc. No. 7.) Defendant also filed a motion to dismiss the Complaint. (Doc. No. 5.) This order follows.

# II.   LEGAL STANDARD

The Class Action Fairness Act ("CAFA") gives federal courts jurisdiction over certain class actions if the class has at least 100 members, the parties are minimally diverse, and the amount-in-controversy exceeds $5 million. *See* U.S.C. § 1332(d)(2), (5)(B); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). Plaintiff only challenges the amount-in-controversy element. As such, the Court will only address this issue.

A class action that meets CAFA standards may be removed to federal court. 28 U.S.C. § 1441(a). Unlike the general presumption against removal, "no antiremoval presumption attends cases invoking CAFA . . . ." *Dart Cherokee Basin Operating Co. v.*

---

[1] The following facts are taken from the Complaint and construed as true for the limited purpose of resolving the instant motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

*Owens*, 574 U.S. 81, 89 (2014). In fact, Congress intended CAFA jurisdiction to be "interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

Under CAFA, the burden of establishing removal jurisdiction rests on the removing party. *See Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) (citing *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006)). A removing defendant need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold, and the defendant's amount in controversy allegation should be accepted if not contested by the plaintiff or questioned by the court. *See Owens*, 574 U.S. at 89. If, however, "a defendant's assertion of the amount in controversy is challenged . . . . both sides submit proof and the court decides, by a preponderance of the evidence whether the amount-in-controversy requirement has been satisfied." *Id.* (citing 28 U.S.C. § 1446(c)(2)(B)). Under the preponderance of the evidence standard, a defendant must establish "that the potential damages could exceed the jurisdictional amount." *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010)).

A defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold and need not contain evidentiary submissions. *Owens*, 574 U.S. at 89. Where, as here, a complaint does not specify the damages sought, the defendant must prove it is more likely than not the amount in controversy exceeds $5,000,000. *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010). A defendant is not obligated to research, state, and prove a plaintiff's damages, but the defendant must use facts to support its allegation. *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008).

## III.   DISCUSSION

The parties here dispute the "amount in controversy" element of CAFA jurisdiction. The Court first addresses the motion to remand. Because this issue is dispositive, the Court

need not reach the merits of Defendant's motion to dismiss.[2]

### A. Meal and Rest Break Claims

The Court first considers the amount in controversy calculations concerning Plaintiff's meal and rest break claims. Plaintiff alleges Defendant "engaged in a systematic pattern of wage and hour violations" and that Plaintiff and the purported class "did not receive all [meal or] rest breaks or payment of one (1) additional hour of pay at Plaintiff's and Class Members' regular rate of pay when a rest [or meal] break was missed, late, or interrupted." (Compl. ¶¶ 3, 31, 32.)

Defendant focuses on Plaintiff's use of the phrase "systematic pattern of wage and hour violations" to characterize the consistency of Defendant's alleged violations. (*See* Doc. No. 12 at 10.) Defendant makes the following assumptions regarding the amount-in-controversy calculations for Plaintiff's meal and rest break claims: "Defendant employed over 1,500 non-exempt full-time employees during the putative Class Period." (*Id.* at 15.) These non-exempt employees "generally worked full-time, eight-hour shifts, five days a week." (*Id.* at 11.) Defendant further states the "average hourly rate of pay is $28.81" and that the "putative class worked over 100,000 workweeks" during the class period. (*Id.* at 15.) Defendant assumes "one violation per work week is reasonable and conservative." (*Id.*) One missed meal and one missed rest break per week is, effectively, a 20% violation rate. Defendant previously calculated the amount in controversy for CAFA jurisdiction was at least $5,762,000, based on just two of Plaintiff's claims alone. (Doc. No. 1 at 11–12.) However, in Defendant's opposition to Plaintiff's motion to remand, it newly calculates the amount in controversy for Plaintiff's meal and rest break claims to be $28,810,000 (100,000 workweeks x 5 shifts per week x $28.81 premium penalty at 1 hour of class members' average rate of pay x 2 [one meal break and one rest period premium per shift]).

---

[2] Defendant requests the Court take judicial notice of Plaintiff's complaint in *Weaver v. Amentum Services, Inc.*, No. 37-2022-00006941-CU-OE-CTL, filed in San Diego Superior Court on February 23, 2022. However, the Court need not rely on this exhibit in reaching its conclusion below. Accordingly, the Court **DENIES AS MOOT** Defendants' request for judicial notice of Exhibit A.

(*Id.* at 12 n.2.) Defendant submits the Declaration of May Sebastian, Manager of Human Resources Management Systems for Defendant, for the above figures. (*See* Doc. No. 12-2.)  Plaintiff maintains Defendant's violation rate is not supported by the evidence. (Doc. No. 13 at 13.)

Here, the Court looks first to the allegations in the Complaint to establish the appropriate violation rate. *See Ibarra*, 775 F.3d at 1197 ("In determining the amount in controversy, courts first look to the complaint."); *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) ("[O]ur first source of reference in determining the amount in controversy [is] plaintiffs' complaint . . . ."). Defendant then "bears the burden to show that its estimated amount in controversy relied on reasonable assumptions." *Ibarra*, 775 F.3d at 1199. Defendant argues that because Plaintiff asserts a "systemic pattern of . . . violations," Defendant's assumed violation rate of 20% is reasonable. (*See* Doc. No. 12 at 15.) However, the Ninth Circuit has made clear that assumptions for an amount in controversy calculation "cannot be pulled from thin air . . . ." *Ibarra*, 775 F.3d at 1199. Indeed, assumptions regarding a proposed violation rate need to be "grounded in real evidence." *Id.*

Courts in this District have previously found that assuming a violation rate that is not grounded in real evidence is arbitrary. *See Baretich v. Everett Fin., Inc.*, No. 18-cv-1327-MMA-BGS, 2018 WL 4579857, at *5 (S.D. Cal. Sep. 25, 2018) (quoting *Ibarra*, 775 F.3d at 1199) ("Ms. Dworshak's declaration does not address defendant's alleged violation rates and thus 'offers no information by which the Court may conclude that Defendant's assumptions were not 'pulled from thin air.'"); *Sanders v. Old Dominion Freight Line, Inc.*, No. 16-cv-2837-CAB-NLS, 2017 WL 5973566, at *4 (S.D. Cal. Feb. 2, 2017) (noting that "without evidence to support this violation rate, the use of a 50% violation rate (or virtually any violation rate for that matter) is completely arbitrary and little more than speculation and conjecture.").

Moreover, the allegations in *Ibarra* also concerned those as to a "pattern and practice." 775 F.3d at 1198. Nevertheless, *Ibarra* held that to support a claim as to the

amount in controversy, the defendant must present evidence, not bare assumptions, as to the violation rate. *See Akana v. Estee Lauder Inc.*, No. LA CV19-00806 JAK (PLAx), 2019 WL 2225231, at *7 (C.D. Cal. May 23, 2019) (holding the complaint did not support a one-violation-a-week rate where the plaintiff alleged a "'policy or practice of not providing' meal and rest periods").

Upon review of the pleadings and evidence submitted, Defendant offers no reason "grounded in real evidence" as to why a 20% violation rate is appropriate. *Ibarra*, 775 F.3d at 1199. Ms. Sebastian's declaration does not include any information relevant to the frequency of meal and rest break violations. While Ms. Sebastian's declaration does include useful data regarding the potential class size and hourly wages, there is no evidence that would lead the Court to believe that Defendant's assumptions were not "pulled from thin air." *Id.* Similar to *Sanders*, "[b]ecause use of either a 25% violation rate or a 50% violation rate would at a minimum be equally reasonable (or equally unreasonable), it is impossible for the Court to decide that [the defendant] has satisfied its burden." *Sanders*, 2017 WL 5973566, at *4. Accordingly, the Court finds Defendant's meal and rest break violation rates to be unreasonable.

### B. Unpaid Minimum Wages and Overtime

Plaintiff further alleges Defendant failed to pay minimum and overtime wages during the period in question. (*See* Compl. ¶¶ 29, 37–55.) Defendant argues that because Plaintiff alleges a systematic pattern of violations without including facts regarding the frequency of the violations, it can assume one hour of unpaid overtime a week. (*See* Doc. No. 12 at 15 (citing *Francisco v. Emeritus Corp.*, No. CV 17-02871-BRO (SSx), 2017 WL 2541401, at *6–7) (C.D. Cal. June 12, 2017)).) Based on this violation rate, Defendant asserts the amount in controversy for these two claims is $4,321,000. (*Id.*)

Defendant offers no evidence supporting that a one-hour-per-workweek violation rate is suitable for calculation purposes. *See Holcomb v. Weiser Sec. Servs., Inc.*, 424 F. Supp. 3d 840, 847 (C.D. Cal. 2019) (finding the defendant failed to justify the use of a once-per-week violation rate "seemingly plucked from thin air" and thus held the violation

rate unreasonable). Defendant fails to justify the use of a once-per-week violation rate over some other rate. *See Garibay v. Archstone Cmts. LLC*, 539 F. App'x 763, 764 (9th Cir. 2013) (finding the defendants failed to provide evidence that the assumption of two rest break violations per week was "more appropriate" than one violation per pay period or one violation per month). Without evidentiary support, Defendant's violation rate is merely an assumption, seemingly plucked from thin air. Accordingly, the Court finds Defendant's overtime and minimum wage violation rate to be unreasonable.

### C.    Waiting Time Penalties

Defendant states that between May 30, 2018 and November 24, 2021 (the Waiting Time Subclass period), over 650 non-exempt employees' employment was terminated and their average hourly rate of pay was approximately $28.74. (Doc. No 12 at 16.) Defendant next asserts it failed to pay each Waiting Time Penalties Subclass member their outstanding wages for the full 30-day statutory period—a 100% violation rate. (*Id.*) However, Defendant submits no proof that would enable the Court to probe this assumption. Moreover, the nexus between the allegations in the Complaint and Defendant's assumption that all former employees are still owed outstanding wages is too attenuated. (*See* Compl. ¶¶ 90–91.) *See Maharaj v. Charter Comm., Inc.*, No. 20-cv-00064-BAS-LL, 2021 WL 4473175, at *10 (S.D. Cal. Sept. 30, 2021). As such, the Court finds Defendant's waiting time penalties violation rate to be unreasonable.

### D.    Wage Statement Violations

The Court finds Plaintiff's wage-statement violation claims are derivative of his meal and rest period claims. Plaintiff contends employees received inaccurate wage statements in part because Defendant did not include the pay due to the employees for missed meal and rest periods. (Compl. ¶¶ 33, 80–85.) If Defendant's calculations for missed meal and rest periods are faulty, then the wage statement violation calculations are also inherently flawed. *Longmire v. HMS Host USA, Inc.*, No. 12cv2203 AJB (DHB), 2012 WL 5928485, at *8 (S.D. Cal. Nov. 26, 2012). Accordingly, the calculations for wage statement violations are unreasonable for amount in controversy purposes as well.

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### E.    Attorneys' Fees

#### 1.    Class Claims

"Defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence; we may not relieve the defendant of its evidentiary burden by adopting a *per se* rule for one element of the amount at stake in the underlying litigation." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 796 (9th Cir. 2018). Moreover, a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place. *See Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009).  A state may adopt the lodestar method for determining reasonable attorneys' fees under certain statutes, *see Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001), or not allow recovery of attorneys' fees for legal work on certain types of claims, *see Kirby v. Immoos Fire Prot., Inc.*, 53 Cal. 4th 1244, 1255 (2012) (stating that the attorneys' fees shifting provisions in California Labor Code §§ 218.5 and 1194 do not apply to legal work relating to meal and rest period claims).

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (emphasis added) (internal citation omitted). Although unspecified by Defendant, the Court interprets the Declaration of Defendant's counsel Guillermo A. Escobedo to be in support of applying the lodestar method. (*See generally* Declaration of Guillermo A. Escobedo ("Escobedo Decl."), Doc. No. 12-3.) "Only reasonable fees will be included in the calculation." *Lippold v. Godiva Chocolatier, Inc.*, No. C 10-00421 SI, 2010 WL 1526441, *3–4 (N.D. Cal. Apr. 15, 2010) (citation omitted). "The Court determines a reasonable fee award using the lodestar method, which calculates a reasonable award by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Barkett v. Sentosa Props. LLC*, No. 1:14-CV-01698-LJO, 2015 WL 5797828, at *4 (E.D. Cal. Sept. 30, 2015) (citing *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) and *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir.2008)).

In setting a rate, courts may rely on, *inter alia*, affidavits submitted by counsel, *see, e.g.*, *Blum v. Stenson*, 465 U.S. 886, 898 (1984); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); awards in comparable cases, *Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir. 2009) (finding that courts may rely on decisions by other courts awarding similar rates for work in the same geographical area by attorneys with comparable levels of experience); and its "own knowledge of customary rates and [] experience concerning reasonable and proper fees." *Fritsch*, 899 F.3d at 795.

In applying the lodestar method here, Defendant generally asserts that in the last five years, the plaintiff's attorneys in San Diego, California that have disclosed the general amount of fees and costs incurred in prosecuting their cases have stated their hourly rates to range from $500 to $800. (Escobedo Decl. ¶ 7.) Further, Defendant contends Plaintiff will likely seek "at least 300 hours" and "estimate[s] that Plaintiff's counsel will engage in written discovery, review preliminary class data and related information, take the depositions of two to four Amentum representatives, file a motion(s) for class certification, oppose a motion for summary judgment/adjudication and attend mediation." (*Id.* ¶ 9.) Defendant additionally speculates that if this matter is certified as a class action, "an additional 250 hours or more could be expended in pre-trial litigation and trial. (*Id.* ¶ 10.) Thus, Defendant asserts Plaintiff would seek to recover roughly $355,000, "in addition to $100,000 in costs . . . ." (*Id.* ¶¶ 9–10.)

As Plaintiff notes, Defendant "relies solely on the declaration of its counsel, who has conjured up attorneys' fee ranges based only on matters that he has litigated in the past five years." (Doc. No. 13 at 19.) While a defendant may meet its burden to establish a reasonable estimate of attorneys' fees by identifying awards in other cases, those cases must be similar enough to the case at hand that the court can conclude it is more likely than not that the plaintiff may incur a similar fee award. *See, e.g.*, *Cruz v. Mercedes-Benz USA, LLC*, No. 220CV05167ODWJCX, 2020 WL 5797917, at *3–4 (C.D. Cal. Sept. 29, 2020); *Kaplan Kaplan v. BMW of North America, LLC*, No.: 21-CV-857 TWR (AGS), 2021 WL 4352340, at *6 (S.D. Cal. Sept. 24, 2021). Defendant here has not cited cases in which

attorneys' fees were awarded in similar cases or introduced evidence of billing rates for Plaintiffs' counsel, or fees Plaintiffs' counsel has been awarded in similar cases. *See, e.g.*, *Kaplan Kaplan*, 2021 WL 4352340, at \*5. Moreover, Defendant fails to assert the hourly rates for those attorneys in San Diego were based on cases with any similarities to the case at hand. *Id.*

The Court concludes Defendant has not carried its burden of "prov[ing] that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence . . . . with summary-judgment-type evidence." *Fritsch*, 899 F.3d at 795 (quoting *Ingram*, 647 F.3d at 928). While Plaintiff has not offered an estimate of attorneys' fees, Defendant has offered no evidence in support of its claim that attorneys' fees will amount to $355,000 "in addition to $100,000 in costs." Moreover, because the Court previously rejected Defendant's calculations for the amount in controversy above, Defendant has failed "to prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence." *Fritsch*, 899 F.3d at 795.

### 2.    Plaintiff's Individual Claims

Defendant alternatively argues removal is proper for Plaintiff's individual Labor Code claims pursuant to diversity jurisdiction under 28 U.S.C. § 1332(a). (Doc. No. 1 ¶ 46.) Because CAFA "explicitly expands diversity jurisdiction rather than diminishes its scope," failure to meet CAFA requirements does not preclude the possibility of meeting traditional diversity jurisdiction requirements under § 1332(a). *Dittmar v. Costco Wholesale Corp.*, No. 14-CV-1156-LAB-JLB, 2014 WL 6892189, at \*6 (S.D. Cal. Nov. 5, 2014). The Third Circuit has held the same, as have various district courts. *See Shah v. Hyatt Corp.*, 425 F. App'x 121, 124–25 (3d Cir. 2011); *Sacchi v. ABC Fin. Servs., Inc.*, Civ. No. 14-1196 (FLW), 2014 WL 4095009 (D. N.J. Aug. 18, 2014); *Martinez v. Morgan Stanley & Co.*, No. 09cv2937-L(JMA), 2010 WL 3123175, at \*5 (S.D. Cal. Aug. 9, 2010). Accordingly, the Court must next determine whether the requirements of § 1332(a) diversity jurisdiction have been met.

Under 28 U.S.C. § 1332(a)(1), district courts have original jurisdiction over civil actions between citizens of different states when the amount in controversy exceeds $75,000. It is undisputed there is diversity between Plaintiff, a citizen of California, and Defendant, a company whose principal place of business is in Delaware. (Doc. No. 1 ¶ 24.) Thus, the only issue remaining is whether the amount in controversy is met.

In its removal, Defendant calculated the amount in controversy for the individual claims to be at least $95,751.28, including $18,950 in attorneys' fees. (*Id.* ¶ 50(f).) However, Defendant later amended its calculation for attorneys' fees in its opposition, contending "Plaintiff would incur between $310,000 and $455,000 in attorney's fees and costs if he litigated his individual claims or class claims through trial." (Doc. No. 12 at 19–20.) Defendant further amended its calculation for Plaintiff's individual claims against Defendant, asserting "Plaintiff's claims, before accounting for attorney's fees and costs, amount to $16,698.80 in controversy . . . ." (*Id.* at 18.)  Plaintiff's objects that the calculations are speculative and self-serving, and rely exclusively on attorneys' fees to reach the amount in controversy. (Doc. No. 13 at 19.) Specifically, Plaintiff asserts that under Defendant's calculations, his individual claims only reach $16,698.80 before attorneys' fees. (*Id.* (citing Doc. No. 12 at 18).)

Plaintiff further argues removal was improper because Defendant improperly calculated attorneys' fees for purposes of Plaintiff's individual amount in controversy. (Doc. No. 13 at 19–20.) Plaintiff maintains that, in a putative class action, potential attorneys' fees "cannot be attributed solely to Plaintiff for the purpose of determining the amount in controversy . . . ." (*Id.* (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001)). Plaintiff argues this issue has been settled by the Ninth Circuit's decisions in *Kanter* and *Gibson v. Chrysler Corp.*, 261 F.3d 927, 942 (9th Cir. 2001). Defendant does not address this argument.

Generally, "where an underlying statute authorizes an award of attorneys' fees, . . . such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). However, in a putative class action, attorneys' fees

22-cv-00108-AJB-NLS

"cannot be allocated solely to [named] plaintiffs for purposes of amount in controversy," unless the statute in question authorizes an award of attorneys' fees "solely to the named plaintiffs in a class action . . . ." *Gibson*, 261 F.3d at 942. In *Gibson*, the Ninth Circuit noted that a California statute which authorized an award of attorneys' fees "to a successful party" did not satisfy that condition, whereas a Louisiana statute, which awarded attorneys' fees to "the representative parties" in a class action, did satisfy that condition. *Gibson*, 261 F.3d at 942. Soon thereafter, the Ninth Circuit held that "potential attorneys' fees . . . cannot be attributed solely to the named plaintiffs for purposes of amount in controversy," where the statute in question authorized an award of attorneys' fees "to a prevailing plaintiff." *Kanter*, 265 F.3d at 858. In both cases, the Ninth Circuit reasoned that, in a putative class action, attributing attorneys' fees solely to a named plaintiff for purposes of amount in controversy would be improper, because the plaintiff would not ultimately be entitled to the entirety of that award upon a favorable disposition of the case. *Gibson*, 261 F.3d at 942; *Kanter*, 265 F.3d at 858.

In the present case, Plaintiff would be entitled to attorneys' fees upon a favorable disposition of the matter. *See* Cal. Labor Code § 1194(a); Cal Labor Code § 226(e). However, the relevant sections of the California Labor Code do not authorize awards of attorneys' fees "solely to the named plaintiffs in a class action," but rather to "an employee" or "any employee" who prevails on his or her claim. *Gibson*, 261 F.3d at 942. Therefore, under *Gibson* and *Kanter*, attorneys' fees "cannot be allocated solely to [Plaintiff] for purposes of amount in controversy," but rather must be divided by the number of putative class members. *Gibson*, 261 F.3d at 942; *see Davenport v. Wendy's Co.*, No. 2:13-cv-02159-GEB-KJN, 2013 WL 6859009, at *2 (E.D. Cal. Dec. 24, 2013) (holding that, under CLC § 1194(a) and § 226(e), the "estimate of potential attorneys' fees must be divided by the number of class members," for purposes of amount in controversy). Thus, Defendant has not established that the amount in controversy exceeds $75,000.

///

///

12

**IV.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion to remand and **DENIES AS MOOT** Defendant's motion to dismiss.

**IT IS SO ORDERED.**

Dated:  March 30, 2022

Hon. Anthony J. Battaglia
United States District Judge

13