Guillermo A. Escobedo (SBN 206198)
Lara P. Besser (SBN 282289)
JACKSON LEWIS P.C.
225 Broadway, Suite 2000
San Diego, California 92101
Telephone: (619) 573-4900
Facsimile: (619) 573-4901
Guillermo.escobedo@jacksonlewis.com
Lara.besser@jacksonlewis.com

Attorneys for Defendant
AMENTUM SERVICES, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| STEPHEN V. WEAVER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMENTUM SERVICES, INC.; AECOM; and DOES 1 through 20, inclusive,<br><br>Defendants | Case No.: 3:22-cv-108-AJB-NLS<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR RECONSIDERATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Filed concurrently with Request for Judicial Notice In Support of Reply to Motion For Reconsideration*]<br><br>Hearing Date: June 30, 2022<br>Hearing Time: 2:00 p.m.<br>Hearing Place: Room 4A<br>Judge: Hon. Anthony J. Battaglia |
|---|---|

## I. THE COURT'S REMAND ORDER CONTRADICTS PRECEDENT ESTABLISHED BY *JAUREGUI,* REQUIRING REVERSAL.

The Court's Remand Order, based on an anti-removal presumption, applied the same "inappropriate demand of certitude" the Ninth Circuit held improper in *Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989 (9th Cir. 2022). Defendant offered substantial evidence and identified reasonable assumptions of the amount in controversy based on the allegations of Plaintiff's Complaint. *See Arias v. Residence Inn by Marriot*, 936 F.3d 920, 926-27 (9th Cir. 2019). Although these calculations have been held to be appropriate, this Court erred by "zeroing-out" the value of all claims offered to support CAFA jurisdiction. As such, Defendant requests that the Remand Order be vacated. *See Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 993, (9th Cir. 2022.)

### A. *Jauregui* Established an Intervening Change in Controlling Law.

An intervening change in controlling law is found where "a subsequent decision 'creates a *significant shift* in [a court's] analysis,'" *Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 282 F.R.D. 216, 222 (D. Ariz. 2012) (quoting *Beckstrand v. Elec. Arts Grp. Long Term Disability Ins. Plan*, 2007 U.S. Dist. LEXIS 100946, at *2 (E.D. Cal. Jan. 19, 2007)). Where a new circuit decision adopts and applies otherwise persuasive authority that lower courts previously refused to follow, the new circuit decision is considered an intervening change in controlling law. *See Teamsters Loc. 617*, 282 F.R.D. at 223 (citing *Sequoia Forestkeeper v. United States Forest Serv.*, 2011 U.S. Dist. LEXIS 26447 (E.D. Cal. March 15, 2011)).

In *Jauregui* the district court improperly imposed "a presumption against CAFA's jurisdiction" which resulted in "an inappropriate demand of certitude from Roadrunner over its assumptions used in calculating the amount in controversy." *Jauregui*, 28 F.4th at 993. This caused the district court to improperly reject defendant Roadrunner's assumptions and dismiss its estimates for certain claims. *Id*. The district court also erred by assigning a $0 value to five claims simply because it disagreed with the assumptions underlying the calculations. *Id*. at 994. The Ninth Circuit overturned *Jauregui's* remand

order, finding that the district court improperly "put a thumb on the scale against removal." The Ninth Circuit ruling instructed district courts to not reject a removing defendant's estimate of a claim when it disagrees with an assumption on a claim's value. Instead, district courts are to "consider the claim under [a] better assumption" if a better assumption can be identified. *Id*. at 996; *see also Ramirez v. HV Global Mgmt. Corp*., 2022 U.S. Dist. LEXIS 74811 at *6-8 (N.D. Cal. Apr. 25, 2022) (interpreting *Jauregui*). Given that the *Jauregui* ruling created "a *significant shift* in a court's analysis," it constitutes an intervening change in the law. *See Teamsters Loc. 617*, 282 F.R.D. at 222.

Plaintiff relies on *Dart Cherokee* to argue that *Jauregui* is not an intervening change in controlling law, but rather just a new application of the rule. Oppo. 5:24-28. However, *Jauregui* was distinct from *Dart Cherokee* because *Jauregui* directs district courts not to assign a $0 value to claims merely because they disagree with an underlying assumption. *Jauregui*, 28 F.4th at 993-994. Moreover, while *Dart Cherokee* held that "no antiremoval presumption attends cases invoking CAFA," there were district courts that disregarded or refused to follow the ruling. *See e.g.*, *Williamson v. Genentech, Inc*. 2020 U.S. Dist. LEXIS 46999, at *5 (N.D. Cal. Mar. 18, 2020) (quoting *Provencial Gov't of Marinduque v. Placer Dome, Inc*. 582 F. 3d 1083, 1087 (9th Cir. 2009) (Under CAFA, "the 'removal statute is strictly construed against removal jurisdiction.'")). As such, *Jauregui's* ruling on the "no antiremoval presumption" served to confirm the issue. Finally, and contrary to Plaintiff's assertion, Defendant did not consider *Jauregui* to "be a reiteration of prior law." The word "Clarification" implies change to make something less confusing, where "reiteration" implies merely repeating the same. Finally, Plaintiff misconstrues *Appel v. Concierge Auctions, LLC,* 2022 WL 623863, at *3 (S.D. Cal. Mar. 2, 2022), as the case never mentioned *Dart Cherokee*.

### B. Amentum Offered Substantial Evidence and Identified Reasonable Assumptions to Support Its Valuations of the Claims.

Plaintiff's Complaint contained minimal factual allegations to support his claims, so Amentum used various assumptions to calculate the amount in controversy, which well-

established authority permits. Plaintiff inaccurately argues that Amentum's damages estimates must be based on evidence of Labor Code violation rates, and that Amentum's assumptions were inadequate because its supporting declaration did not explain "how many hours of potential unpaid time were evidenced in its records or how many shifts were eligible for meal period *without one recorded*." Oppo. 7:5-10 (emphasis added). The Court's Remand Order mirrors the same improper standard. As to the break claims, the Court held: "Defendant offers no reason "grounded in real evidence" as to why a 20% violation rate is inappropriate" because "Ms. Sebastian's declaration does not include any information relevant to the frequency of meal and rest break *violations*." Order 6:6-9. As to the wage claims, the Court held: "Defendant failed to justify the use of a once-per-week violation rate over some other rate" and that "without evidentiary support, Defendant's violation rate is merely an assumption, seemingly plucked from thin air." Order 7:1-2.

It is well settled a defendant is not required to prove plaintiff's damages to demonstrate reasonable assumptions to satisfy CAFA jurisdiction. *Arias v. Residence Inn by Marriot*, 936 F.3d 920, 926-27 (9th Cir. 2019) ("assumptions about the frequency of violations" do not need to be proven if they are "reasonable in light of the allegations in the complaint"); *Mariscal v. Ariz. Tile, LLC* 2021 U.S. Dist. LEXIS 72318, at *3 (C.D. Cal. 2021) (quoting *Mortley v. Express Pip & Supply Co.*, 2018 U.S. Dist. LEXIS 18761 at *2 (C.D. Cal. 2018) ("While the assumptions made in support of the amount in controversy calculation must be reasonable, [a Defendant] is not obligated to research, state and prove the plaintiff's claims for damages."); *Sanchez v. Russel Sigler, Inc.*, 2015 U.S. Dist. LEXIS 55667, at *5 (C.D. Cal. Apr. 28, 2015) ("[a] removing defendant is not obligated to research, state and prove the plaintiff's claims for damages.")

"The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Arias*, 936 F.3d at 927 (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)). A defendant removing under CAFA may "rely on reasonable assumptions" when calculating the amount in controversy that are "reasonable in light of the allegations in the complaint." *Arias*, 936 F.3d. *at* 921,

927. "[A]assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" *Arias*, 936 F.3d at 927 (quoting *Ibarra*, 775 F.3d at 1199); *see also Lewis*, 627 F.3d at 400 ("To establish the jurisdictional amount, Verizon need not concede liability for the entire amount, which is what the district court was in essence demanding by effectively asking Verizon to admit that at least $5 million of the billings were 'unauthorized…'").

### i. Amentum's Meal and Rest Break Assumptions Are Reasonable

Plaintiff's Complaint broadly alleges Defendant engaged in a systematic pattern and *ongoing* practice of not providing meal and rest breaks to the class, resulting in "a loss of wages and compensation." (Compl. ¶¶ 3, 30-31, 61, 64, 68, 71.) For purposes of calculations, Defendant assumed it failed to pay one meal and one rest period premium each week, which is a 20% violation rate. By filing a Complaint that lacked specificity with only boilerplate "pattern and practice" contentions, Plaintiff made it "reasonable to assume that putative class members that worked a standard 8 hour a day, 40 hour a week schedule would be entitled to one meal break premium and two rest periods each day." *Gant v. ALDI, Inc.*, 2020 WL 1329909, at *5 (C.D. Cal. Mar. 20, 2020.)

Plaintiff has failed to offer any alternative assumptions. See *Franke v. Franke v. Anderson Merch. LLC,* 2017 U.S. Dist. LEXIS 119087, at *5 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice – or other similar language – and where plaintiff offers no evidence rebutting this violation rate."). Amentum purposely did not use a 100% rate in its Opposition to Plaintiff's Motion to Remand; instead it applied a conservative estimate of 20% violation rate (or one violation per week), which district courts consistently uphold as reasonable where the complaint refers broadly to "pattern and practice" allegations as Plaintiff's Complaint does here.[1] Contrary to the Court's Remand Order and Plaintiff's Opposition, Amentum is not

---

[1] *Ramirez*, 2022 U.S. Dist. LEXIS 74811, *11-12 (finding reasonable a 25% violation rate when Complaint alleges only vague "pattern and practice" language); *Sanchez v. Cap. Contractors*, 2014 U.S. Dist. LEXIS 133598, at *3 (N.D. Cal. Sept. 22, 2014); *Biag* v. King George J&J Worldwide Sers. LLC, 2020 U.S. Dist. LEXIS 129528, at *7 (S.D. Cal. 2020); *Avila v. Rue*

required to provide evidence establishing a "violation rate." Such a requirement imposes an improper burden on Amentum to prove Plaintiff's alleged damages to invoke CAFA jurisdiction. See *Arias*, 936 F.3d at 927; *Mariscal* 2021 WL 1400892, at *3; *Mortley,* 2018 WL 708115, at *2.

Moreover, the evidence and assumptions Amentum offers here are identical to that offered by Roadrunner in *Jauregui* which the Ninth Circuit held, and Plaintiff admits, were "substantial" and reasonable. Just like the Plaintiff's Complaint here, *Jauregui*'s complaint broadly alleged the same "pattern and practice" of wage and hour violations regarding her meal and rest break claims, without specifying any violation rates. (Request for Judicial Notice, Exhibit 1, pgs. 12-38 (Jauregui's Complaint), ¶¶ 25, 61-63, 70-71.) Roadrunner assumed an even higher 25% violation rate than the 20% violation rate Amentum assumed here. (RJN, Ex. 1, pgs. 60-81 (Roadrunner's Oppo. Motion to Remand), Section II(A)(2)(ii), pg. 13.) Relevant to the meal break and rest period claims, Roadrunner offered the number of shifts worked by the putative class members that were *eligible* for meal breaks and rest periods and multiplied them by the putative class's average rate of pay and discounted it by 25% to estimate the amount in controversy in these claims. (*Id.*) This is effectively the same evidence Amentum has offered here.

In support of Amentum's Opposition to the Motion to Remand, Ms. Sebastian's declaration established the minimum number of putative class members and workweeks worked during the class period, their average rate of pay, and also offered "non-exempt employees typically worked at least 8 hours per day, 40 hours (sic) per week" and in fact "more than 99% of Amentum non-exempt California-based employees are classified as

---

*21, Inc.*, 432 F. Supp. 3d 1175, 1189 (E.D. Cal. July 22, 2020) ("District courts have found that violation rates of 25% to 60% can be reasonably assumed as a matter of law based on 'pattern and practice' or 'policy and practice allegation[s]"); *see also Olson v. Becton, Dickinson, and Co.*, 2019 U.S. Dist. LEXIS 165789, at *4 (S.D. Cal. Sept. 25, 2019) (finding 25% violation rate to be appropriate based on plaintiff's "pattern and practice" allegations); *Elizarraz v. United Rentals, Inc.*, No. 2:18-CV-09533-ODW (JC), 2019 U.S. Dist. LEXIS 62065, 2019 WL 1553664, at *3-4 (C.D. Cal. Apr. 9, 2019) (using 50% violation rate for meal period claim and 30% violation rate for rest period claim); *Bryant* v. NCR Corp., 284 F. Supp. 3d 1147, 1151 (S.D. Cal. Feb. 21, 2018) (using 60% violation rate for the meal period claim and 30% violation rate for rest period claim); *Alvarez v. Off. Depot, Inc.*, No. CV-17-7220-PSG (JPRx), 2017 U.S. Dist. LEXIS 197358, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (using 60% violation rate); *Oda* v. Gucci Am, Inc., 2015 U.S. Dist. LEXIS 1672 (C.D. Cal. 2015), at *4 (using 50% violation rate).

full-time employees, working at least 40 hours a week." (Oppo. Motion To Remand, Decl. May Sebastian, ¶¶ 4-5.)

California Labor Code section 512 requires any employee working over 5 hours a day, or over 6 hours a day with a meal period waiver in place, be entitled to receive a 30-minute duty-free meal break. Cal. Lab. Code §512. California law also requires employers to provide 10-minute rest periods to any employee working over 3.5 hours, for each 4-hour work period or major fraction thereof. Cal. Lab. Code § 226.7; Cal. Code Regs., tit. 8, § 11040, subd. 12(A). Thus, by presenting evidence that 99% of the class members worked full-time 8-hour shifts each day, Defendant has offered evidence that effectively 99% of the putative Class Members' shifts worked were both meal breaks and rest period *eligible* – the same evidence offered by Roadrunner, which the Ninth Circuit held was "substantial" and cannot be disregarded with a $0 valuation.

Plaintiff's Opposition misrepresents that Roadrunner offered evidence of "a 81.92% violation rate for shifts long enough to be entitled to a meal period." Oppo. 6:16-17. This is not so. Camisha Washington's declaration in support of Roadrunner's Opposition to Jauregui's Motion to Remand, attached as Exhibit 1 to Plaintiff's Request for Judicial Notice in the Opposition, merely identified how many shifts worked by the putative class members were *eligible* for meal periods. This is a far cry from Plaintiff's assertion that Defendant demonstrate "how many shifts were eligible for a meal period *without one recorded*." Oppo. 7:5-8. In its Opposition to the Motion to Remand, Amentum offered the same evidence as Roadrunner did in *Jauregui*, when faced with identical Complaint allegations, and even applied a lower assumed violation rate. As such, Amentum's offered assumptions on these claims are based on "substantial" evidence and must be afforded their full value $**5,762,000**, which alone exceeds the minimum to establish CAFA jurisdiction.[2] A district court that rejects a defendant's assumed violation rate "must look for a reasonable 'alternative assumption' as a basis for recalculation. *Ramirez*, 2022 U.S. Dist. LEXIS

---

[2] 100,000 workweeks x 1 violation per workweek x $28.81 average rage of pay penalty = $2,881,000 in penalties for the meal break. Assuming 1 violation per workweek for rest breaks equals the same penalties, for a total of $5,762,000 in penalties in controversy for both the meal and rest break claims asserted by Plaintiff.

7

CASE NO. _3:22-cv-108-AJB-NLS_
DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

74811, at *13, citing *Jauregui*, 28 F.4th at 994. Even if the Court were to apply an alternative assumed 99% rate, the amount in controversy on these claims still exceeds CAFA jurisdictional threshold at **$5,704,380**.

### ii. Amentum's Minimum and Wage Assumptions Are Reasonable

With respect to Plaintiff's wage claims, the Complaint alleges Amentum engaged in a "systematic pattern of wage and hour violations"…such that "Plaintiff and Class Members were not paid all wages (including minimum and overtime wages) for all hours worked, including, but not limited to requiring Plaintiff and Class Members to work off-the-clock…"(Compl. ¶¶ 3, 29, 40, 52.) When faced with a Complaint that broadly alleges "pattern and practice" allegations of unpaid wages like Plaintiff does here, "[d]istrict courts in this circuit have found violation rates ranging from 20% to 60% [] appropriate." *Ramirez*, 2022 U.S. Dist. LEXIS 74811, at *11 (citing *Alvarez*, 2017 U.S. Dist. LEXIS 197358, at *3 (60% violation rate); *Brown v. Janus of Santa Cruz*, 2021 U.S. Dist. LEXIS 147197, at *6-7 (25% violation rate); *Trigueros v. Stanford Fed. Credit Union*, 2021 U.S. Dist. LEXIS 120271, at *4 (N.D. Cal. Jun. 28, 2021) (20% violation rate)). It is well settled that under these circumstances where Plaintiff's Complaint contained little to no factual allegations to support his claims other than broad allegations of engaging in "pattern and practice" of Labor Code violations, 25% is a reasonable assumption for overtime and regular wage violations which "is on the low end of the violation rates that this circuit have found acceptable." *Id*., at *12. Contrary to the Court's Order, a defendant does not need to "justify" using its one hour a week of overtime, or 20% violation rate. This rate is conservative given Plaintiff has failed to offer any alternative assumptions. See *Franke,* 2017 U.S. Dist. LEXIS 119087, at *5.

Here, the Court assigned a $0 value to the wage claim and characterizing Amentum's assumption as "unreasonable" by citing to *Garibay v. Archstone Cmts. LLC*, 539 F. App'x 763 (9th Cir. 2013). In *Garibay*, the court dismissed the defendant's assumption of two rest break violations per week, because it failed to offer evidence of why it was "more appropriate" than one per pay period or per month. However, it is well established that the

"legal certainty" standard that the Ninth Circuit applied in *Garibay* to determine whether the evidence sufficiently supported the penalty is no longer applicable in CAFA cases. *See Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1187-88 (E.D. Cal. Jan. 13, 2020); *Ritenour v. Carrington Mort. Servs. LLC*, 228 F. Supp. 3d 1025, Fn. 4 (C.D. Cal. Jan. 5, 2017) (quoting *Mejia v. DHL Express (USA), Inc.*, 2015 U.S. Dist. LEXIS 67212, at *4 (C.D. Cal. May 21, 2015) ("to the extent that *Garibay* demands that removing defendants submit evidence of their liability – i.e., evidence of a violation rate – to establish jurisdiction, it is inconsistent with *Lewis*.")).

The Court here engaged in precisely the type of "unrealistic all-or-nothing exercise of guess-the-precise-assumption-the-court-will-pick" approach rejected by *Jauregui*. *Jauregui*, 28 F.4th at 994. *Jauregui* establishes that if a district court rejects a defendant's assumed violation rate, that court "must look for a reasonable 'alternative assumption'" as a basis for recalculation. *Ramirez*, 2022 U.S. Dist. LEXIS 74811, at *13 (citing *Jauregui*, 28 F.4th at 994). By categorically zeroing out Amentum's value of the claim because Amentum didn't prove up the violation rate, the Court erred.

Similarly, Plaintiff's assertion that Amentum must support its violation rate with a declaration "explaining how many hours of potential unpaid time were evidenced in its records" improperly imposes an "antiremoval presumption." (Oppo. 7:5-7); *Jauregui*, 28 F.4th at 992. However, Plaintiff is improperly requiring Defendant to prove his damages. *See Arias*, 936 F.3d at 927; *Mariscal* 2021 WL 1400892, at *3; *Mortley,* 2018 WL 708115, at *2. As such, Amentum's calculations on this claim stand as reasonable at **$4,321,000**.

### iii. Amentum's Waiting Time Penalties Assumptions Are Reasonable

District Courts regularly find a 100% assumed violation rate for waiting time penalties where the complaint contains no guidance on the extent of violations. *See Ramirez*, 2022 U.S. Dist. LEXIS 74811, at * 17; *Trigueros,* 2021 U.S. Dist. LEXIS 120271, at *5-6 (citing *Kastler v. Oh My Green, Inc.*, 2019 U.S. Dist. LEXIS 185484, at *6 (N.D. Cal. Oct. 25, 2019)); accord *Ford v. CEC Ent., Inc.*, at *3 (N.D. Cal. Jul. 10, 2014) (100% violation rate); *Coleman v. Estes Express Lines Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D.

Cal. 2010) (allowing 100% violation rate assumption where complaint did not "allege a more precise calculation"). *Jauregui* prohibits a court from zeroing out this claim simply because a few employees over a four-year period may have not incurred the full 30-day penalty. Instead, it requires the adoption of alternative reasonable assumption. *Jauregui*, 28 F.4th at 992. Recent district court rulings have applied the new *Jauregui* standard andassumed a 25% alternate violation rate in these situations. *See Ramirez*, 2022 U.S. Dist. LEXIS 74811, at *17-18. Adopting a 25% violation rate here amounts to a value of **$1,120,860** on this claim.[3] When combined with claims above, CAFA's jurisdictional threshold is well established.

## II. THE COURT HAS JURISDICTION TO HEAR DEFENDANT'S MOTION.

Plaintiff's assertion that Defendant missed a 10-day deadline to file its pending motion is unsupported by law. While 28 U.S.C. §1447(d) generally prohibits review of remand orders, Congress expressly vested jurisdiction to federal courts of appeal to review remand orders under CAFA. 28 U.S.C. §1453(c)(1); *Manier v. Medtech Prods., Inc.*, 29 F. Supp. 3d 1284, 1286-87 (S.D. Cal. 2014) (exercising jurisdiction and addressing motion to stay "as Congress has specifically allowed these remand orders to be appealable."). District courts across the nation have interpreted 28 U.S.C. § 1453(c)'s exception to "provide continuing jurisdiction to reopen a previously remanded case," and a motion for reconsideration as a proper alternative to an appeal of a remand order. *Perez-Reyes v. Nat'l Distrib. Ctrs., LLC*, No. 17-2434, 2018 U.S. Dist. LEXIS 221808, at *2 (C.D. Cal. Feb. 8, 2018); *Baron v. Johnson & Johnson*, No. 14-1531, 2014 U.S. Dist. LEXIS 177984, at *2-3 (C.D. Cal. Dec. 17, 2014); *Baden v. PAR, Inc*. 2020 U.S. Dist. LEIS 89808, at *1 (E.D. Mich. May 21, 2020); *Wingo v. State Farm Fire & Gas. Co.*, 2013 U.S. Dist. LEXIS 104135, at *2 (W.D. Mo. July 25, 2013). In *Perez-Reyes*, the defendant did not file an appeal to the court's remand order, but rather pursued an ex parte application for reconsideration under FRCP 59. The court held that a motion for reconsideration under Rule 59(e) was appropriate, and that it had continuing jurisdiction following the remand

---

[3] 25% of $4,483,440 offered at the 100% violation rate in Defendant's Opposition to Motion to Remand. Doc. No. 12, pg. 16.

order under 28 U.S.C. §1447(d). *Id* at *3-4.  Similarly, in *Wingo*, the defendant filed its motion for reconsideration with the district court, which found that it had jurisdiction to entertain and grant the motion.  *Wingo*, 2013 U.S. Dist. LEXIS 104135 at *4. While 28 U.S.C. §1453(c)(1) provides district courts with <u>jurisdiction</u> to review a CAFA remand order on a motion for reconsideration, the grounds for relief and timeline under which a motion for reconsideration may be filed are still governed by Federal Rule of Civil Procedure 59(e) and 60(b), which provide 28 days and 1 year, respectively, from the date of the remand order. Plaintiff cites no authority altering the time to file a motion for reconsideration under FRCP 59(e) or 60(b) simply because <u>jurisdiction</u> is vested to the district court by virtue of 28 U.S.C. §1453(c)(1).

### III.    CONCLUSION

*Jauregui* directs district courts to not assign a $0 value to claims simply because it disagrees with the assumptions underlying the estimated value, but rather to adopt a better alternate assumption. *Jauregui*, 28 F.4th at 992. While *Jauregui* also held a district court can assign a $0 value to a claim when defendant offers "*no* evidence or clearly inadequate evidence supporting its valuation for a claim," that is not what happened here. The Ninth Circuit encouraged District Courts to give defendants "latitude" when analyzing removal "as long as defendants reasoning, and underlying assumptions are reasonable." *Id*. at 993. Amentum has demonstrated its underlying assumptions—even when conservative—are reasonable and meet the CAFA jurisdictional threshold. Failing to assign even a penny to the value of the claims as this Court has done is a manifestly unjust clear error under Rule 59(e) and contrary to an intervening change in controlling law established by *Jauregui*.

DATED:  May 6, 2022                         JACKSON LEWIS P.C.

                                            By:    /s/ Guillermo A. Escobedo
                                                   Guillermo A. Escobedo
                                                   Lara P. Besser
                                                   Attorneys for Defendant
                                                   AMENTUM SERVICES, INC.

4887-4460-4446, v. 1